IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>MARK SIMONS; JOYCE W. SIMONS;<br>SIMONS FAMILY TRUST, Joyce W.<br>Simons, Trustee; SIMONS<br>ENTERPRISES TRUST, Joyce W.<br>Simons and Mark Simons,<br>Trustees; GREENPOINT MORTGAGE;<br>BANK ONE UTAH, N.A.; J. BARRES<br>JENKINS; NORMA C. JENKINS; JP<br>MORGAN CHASE & CO., as<br>Successor in Interest to Bank<br>One, Utah, N.A.<br><br>     Defendants. | Case No. 2:06-CV-750-CW<br><br><br>**REPORT AND RECOMMENDATION** |

Before the court are two opposing motions for summary judgment. The first summary judgment motion was brought by Plaintiff, the United States of America. (Docket Entry #107.) Plaintiff brings its motion on the grounds that there are no genuine issues of material fact as to whether Defendants Mark Simons and Joyce W. Simons (hereafter "Defendants") have outstanding federal tax obligations, as asserted by Plaintiff in this action, and as to whether Plaintiff is entitled to foreclose

its federal tax liens against the subject property as a matter of law.

The second, opposing summary judgment motion was brought by Defendants. (Docket Entry #109.) Defendants argue that Plaintiff failed to properly plead and cannot meet the requirements of its case against Defendants. As a result, Defendants argue, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

Having carefully reviewed both parties' pleadings, and having held a hearing in the matter, the court recommends that Plaintiff's Motion for Summary Judgment be granted and that Defendants' Motion for Summary Judgment be denied.

## BACKGROUND

Plaintiff filed this action seeking to reduce to judgment certain outstanding, unpaid assessments of federal income tax, and related penalties and interest, for the tax years 1992-2000 ("years at issue"). These assessments were made against defendants Mark Simons, Joyce W. Simons, Simons Family Trust, and Simons Enterprises Trust to foreclose the related federal tax liens against two parcels of real property: Defendants' residence (hereafter "Parcel 1"[1]), and the building out of which Mr. Simons operates his bunk bed manufacturing business

---

[1]Parcel 1 is located at 185 West Center Street in Nephi, Utah.

(hereafter "Parcel 2"[2]).  Legal title to both parcels is held by the Simons Family Trust.

In support of the claim to reduce federal income tax assessments to judgment, Plaintiff submitted (1) Certificates of Assessments and Payments; (2) Notices of Deficiency and Explanations of Adjustments; and (3) Defendants' deposition testimony.  With respect to the foreclosure action, Plaintiff submitted deposition testimony and certified copies of deeds to establish that the Simons Family Trust, the record title holder of the parcels at issue, was a nominee of Defendants and a fraudulent transferee.

The Internal Revenue Service (hereafter "IRS") conducted an audit investigation of Defendants for the tax years at issue and issued Notices of Deficiency to Mark Simons, Joyce W. Simons, Simons Family Trust and Simons Enterprises Trust for these tax years.[3]  Because Defendants did not cooperate in the audit process, the IRS made tax assessments based on the Notices of Deficiency against Defendants for the years at issue.  During discovery, rather than presenting evidence to rebut the correctness of the assessments, Defendants argued that they are

---

[2]Parcel 2 is located at 105 West Cetner Street in Nephi, Utah.

[3]In the event that Defendants took the position that the tax liabilities for the tax years at issue should be allocated to one or more of the defendant trusts, the IRS made assessments against each of the trusts.  The court has entered default judgment against each of these trusts.  (Docket Entries #142.)

not taxpayers.  Defendants contended that any gains they received through the operation of Mr. Simons' wood business were offset by human depreciation.

### A.  Defendants' Tax Liabilities

### 1.  Joint Assessments Against Defendants

Upon completion of an audit examination, the IRS issued a Notice of Deficiency to Defendants for the 1992, 1993, and 1994 tax years.  (Docket Entry #107-25, Deposition of Mark Simons (hereafter "Mark Simons Deposition") at pg. 51, ln. 16- pg. 52, ln. 19 (where Mark Simons asserts Fifth Amendment when questioned about receipt of a Notice of Deficiency).)  The Explanation of Adjustments for the 1992 through 1994 tax years explains the basis for the adjustments to Defendants' income tax liabilities for these years.  (Docket Entry #107-2, Declaration of Maureen Neal (hereafter "Neal Declaration") at ¶10 and Exhibit 19.)  In sum, the IRS substantially increased Defendants' income for the 1992 through 1994 tax years based on the gross receipts of the wood working business, which the IRS determined was properly allocated to Defendants because they should be treated as owners of the trusts.  (Docket Entry #107-21, at page GOV 1372-1378.)

Defendants failed to substantiate any business expenses claimed.[4] (*Id.*)

After the Notice of Deficiency was issued, the IRS assessed federal income tax deficiencies against Defendants jointly for the 1992-1994 tax years.  (Docket Entry #107-2, Neal Declaration, Exhibits 7, 8 and 9.)  As of September 11, 2008, the assessments

---

[4]Defendants contend that they "filed all valid federal income tax returns required to be filed for the tax years 1992-2000 and paid all taxes that the Affiants were made liable for and required to be pay under the Constitution for the United States of America . . . ."  (Docket Entry #111, Defendant Simons' Affidavit and Exhibits in Support of Motion for Summary Judgment (hereafter "Affidavit") at ¶ 35.)  Defendants have not submitted with their motion any tax returns for the 1995-2000 tax years.  Exhibit B, attached to Defendants' summary judgment motion, includes what purport to be federal income tax returns for the following tax years: (1) Mark Simons and Joyce Simons, 1992-1994; (2) Simons Enterprises Trust, 1992-1994; (3) Simons Family Trust 1992-1994.  (Docket Entry #111-3.)  With respect to income for the tax years at issue, the affidavit fails to explain the relation between the trust returns and individual returns attached as part of Exhibit B.  Plaintiff has explained that it is impossible to determine how the trust returns relate to the Simons' individual returns or how the income from Mr. Simons' woodworking business was being reported, and the court agrees. For example, the 1993 Tax Return for Simons Enterprises Trust reported that it had in excess of $38,000.00 in business income, but only $14,000.00 in business income is reported on Defendants' individual return.  (Docket Entry #111-3.)  Defendants contend that they "did not realize or receive any profit or gain for tax years 1992 through 2000."  (Affidavit at ¶ 33.)  The returns for Simons Enterprises Trust, however, show income, based apparently on profit from the woodworking business for each of these years. (Docket Entry #111-3.)  This assertion is also erroneous based upon the determinations set forth in the Notices of Deficiency and Explanation of Adjustments introduced in support of Plaintiff's Motion for Summary Judgment.  This assertion also apparently is based on the concept of human depreciation which, as discussed below, has no application in determining income subject to tax.

against Defendants for the 1992-1994 tax years totaled $1,896,288.88. (Docket Entry #107-2, Neal Declaration, at ¶7 and Exhibit 16.)

## 2. Individual Assessments Against Joyce Simons for the 1995-2000 Tax Years

The IRS assessed federal income tax deficiencies against Ms. Simons individually for the 1995-2000 tax years. (Docket Entry #107-2, Neal Declaration, Exhibits 1-6.) As of September 11, 2008, the unpaid balance of federal income tax liabilities assessed against Ms. Simons individually for the 1995-2000 tax years totaled $1,059,037.94. (Docket Entry #107-2, Neal Declaration, at ¶8 and Exhibit 17.) In response to questions concerning the Notices of Deficiency and the IRS audit, Ms. Simons repeatedly asserted the Fifth Amendment.[5] (Docket Entry #107-26, Deposition of Joyce Simons (hereafter "Joyce Simons Deposition") at pg. 46, ln. 25-pg. 49 ln. 21.) Ms. Simmons could offer no specific challenges to the computation of the assessments against her. (Joyce Simons Deposition at pg. 47,

---

[5]When both defendants were deposed and asked about the notices of deficiency for the tax years at issue, they asserted their Fifth Amendment right against self-incrimination despite having no reason to believe that they were under any type of criminal investigation. Defendants' reason for asserting their Fifth Amendment rights was to avoid having the government use their statements in this civil case. Defendants' assertion of the Fifth Amendment in this context allows the court to draw a negative inference that Defendants have no substantive evidence to challenge the tax assessments at issue and that the assessments are correct. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

lns. 7-20.)  When questioned about whether she and Mr. Simons kept business records, Ms. Simons testified:  "Well, only taxpayers are required to keep records and you haven't shown me any evidence that I am one."  Joyce Simons Deposition at pg. 45, lns. 19-20.[6]

---

[6]The United States served interrogatories on Joyce Simons on January 15, 2008, in which it asked for any facts upon which she relied to challenge the assessments made against her:

> 2.  To the extent that you contend that the assessments made by the Internal Revenue Service Against Joyce Simons for the 1992-2000 tax years, as set forth in the Amended Complaint, are incorrect, please set forth all facts upon which you rely to support this contention.

(Docket Entry #115-7, United States' Interrogatories to Joyce Simons at ¶2.)  Ms. Simons provided no factual basis to support any challenge to the assessments.  Instead her response consisted of various alleged procedural errors that the IRS made and legal argument.  (Docket Entry #115-8, Joyce Simons' Answers to Interrogatories, ¶2.)  The interrogatories served upon Ms. Simons requested that she provide all amounts and sources of income from various categories, including income from business or profession.  (Docket Entry #115-7 at ¶5.)  Ms. Simons provided no factual response but objected to providing a response because she asserted that she did not understand the term "sources of income."  (Docket Entry #115-8 at ¶5.)  Further, Ms. Simons also took the position that "there is no legal obligation for anyone to keep documents beyond (7) years, and the seven years expired on December 31, 2007, for documents for the year 2000."  (*Id.*)  Plaintiff requested that Ms. Simons produce any documents upon which she relied to show the assessments were incorrect.  (Docket Entry #115-9, United States' Request for Production of Documents Directed at Joyce W. Simons, at ¶1.)  In response to this request, Ms. Simons produced no documents which substantively challenged the assessments.  (Docket Entry #115-10, Joyce Simons' Answers to Interrogatories.)  Plaintiff requested that Ms. Simons produce documents to reflecting both income and losses for the tax years at issue.  (Docket Entry #115-9 at ¶¶'s 3 and 4.)  Ms. Simons produced no documents from which income or losses could be determined.  (Docket Entry #115-10.)

## 3. Individual Assessments Against
## Mark Simons for the 1995-2000 Tax Years

Like his wife, Mr. Simons asserted his Fifth Amendment rights when questioned about the audit examination conducted by the IRS and the Notices of Deficiency sent to him for the 1995-2000 tax years.[7] (Mark Simons Deposition at pg. 55, ln. 16–pg. 58 ln. 6, and Deposition Exhibits 11 and 12.) Mr. Simons refused to discuss the substance of the adjustments set forth on the Notices of Deficiency. (*Id.*) With respect to the 1995-1998 tax years, the IRS made income adjustments based upon a determination that bank deposits were business gross receipts, and that the cost of goods sold was 45 percent of the gross receipts. (Docket Entry #107-13, Exhibit 11 at page GOV 571; Docket Entry #107-14 at page GOV 545.) With respect to the 1998-2000 tax years, the IRS determined the cost of goods sold by the dollar amount of checks written to vendors. (Docket Entry #107-14, Exhibit 12 at page GOV 547.) The IRS then determined that the cost of goods sold represented 45 percent of gross profit. (*Id.* at GOV 546.)

The IRS assessed federal income tax deficiencies against Mr. Simons individually for the 1995-2000 tax years. (Docket Entries #107-12 to 107-17.) As of September 11, 2008, the unpaid balance of federal income tax liabilities against Mr. Simons individually

---

[7]The court notes that Mr. Simons admits that he "received compensation in exchange for his labor services during the tax years 1992 through 2000." (Affidavit at ¶25.)

for the 1995-2000 tax years totaled $1,053,379.22. (Neal Declaration at ¶9; Docket Entry #107-20.) When questioned specifically about the cost of goods sold for his wood manufacturing business, Mr. Simons asserted the Fifth Amendment. (Mark Simons Deposition at pg. 58, lns. 7-16.) With respect to whether he owed any federal taxes, Mr. Simons stated, "I do not believe that I have received any gains or profits and that I am not subject to any statute in that code that would require me to do what you are saying I should be required to do." (Mark Simons Deposition at pg. 73, lns. 2-5.) Mr. Simons' belief that he is not required to pay federal taxes is based, at least in part, on the concept that he is entitled to deduct the value of a day in his life from the income he receives from his wood manufacturing business.[8] (Mark Simons Deposition at pg. 74, lns. 3-15.)[9]

---

[8]Mr. Simons alleges that he "did not earn or receive taxable income in the amount of $5,125,754.40 for the tax years 1992-2000." (Affidavit at 26.) However, the affidavit fails to contain information from which Mr. Simons' taxable income could be determined for the tax years at issue; therefore, his allegation is not supported by any substantive, admissible evidence.

[9]As with his wife, Plaintiff served interrogatories on Mr. Simons on January 15, 2008, in which it asked for both any facts upon which he relied to challenge the assessments made against him:

> To the extent that you contend that the assessments made by the Internal Revenue Service Against Mark Simons for the 1992-2000 tax years, as set forth in the Amended Complaint, are incorrect, please set forth all facts upon which you rely to support this contention.

(Docket Entry #115-3, United States' Interrogatories to Mark Simons at ¶2.) Mr. Simons provided no factual basis to support any challenge to the assessments. Instead, his response

## B.  Acquisition, Transfer, and Use of Real Property

Mr. Simons acquired the two parcels at issue on January 3, 1995, from unrelated third parties named Paul E. McPherson and Judy R. McPherson.  (Docket Entry #107-27.)  To finance the purchase of the real property, Mr. Simons executed a promissory note in the amount of $71,000.00, which was secured by a deed of trust naming the McPhersons as beneficiaries.  (Docket Entry #107-28.)

On February 15, 1995, Mr. Simons executed a quitclaim deed purporting to transfer the real property to Ms. Simons, Trustee for Simons Family Trust.  (Docket Entry #107-29.)  The property was subdivided sometime around 1996 so that Defendants could

---

consisted of legal argument asserting various procedural errors that he alleges the IRS made.  (Docket Entry #115-4, Mark Simons' Answers to United States' First Set of Interrogatories, at ¶2.) Plaintiff served interrogatories on Mr. Simons in which it asked him for all amounts and sources of income from various categories, including income from business or profession.  *See* (Docket Entry #115-3, at ¶5.)  Mr. Simons provided no factual response but objected to providing a response because he asserted that he did not understand the term "sources of income."  (Docket Entry #115-4, at ¶5.)  Mr. Simons also took the position that "there is no legal obligation for anyone to keep documents beyond (7) years, and the seven years expired on December 31, 2007, for documents for the year 2000."  (*Id.*)  Plaintiff requested that Mr. Simons produce documents he relied upon to show the assessments were incorrect.  (Docket Entry #115-5, United States' Request for Production of Documents Directed to Mark Simons, at ¶1.)  In response to this request, Mr. Simons produced no documents which substantively challenged the assessments. (Docket Entry #115-6, Defendant's Answers to United States' Request for Production.)  Plaintiff requested that Mr. Simons produce documents reflecting both income and losses for the tax years at issue.  (Docket Entry #115-5, at ¶¶'s 3 and 4.)  Mr. Simons produced no documents from which income or losses could be determined.  (Docket Entry #115-6, Exhibit 5.)

build a house on it.  (Mark Simons Deposition at pg. 43, lns. 10-15.)  On May 20, 1997, Simons Family Trust, Trustee Joyce W. Simons, conveyed Parcel 1 to Mr. Simons by quitclaim deed.  (Docket Entry #107-30.)  On the same day, Mr. Simons conveyed Parcel 1 back to Simons Family Trust, Trustee Joyce W. Simons.  (Docket Entry #107-31.)  Mr. Simons has lived at both the 105 West Center Street address and the 185 West Center Street address.  (Mark Simons Deposition at pg. 10, lns. 11-14.)  There is a house at the 185 West Center Street address.  (*Id.*)

Mr. Simons operates his woodworking business from the address at 105 West Center Street.  (Mark Simons Deposition at pg. 11, lns. 14-19.)  Mr. Simons manufactures bunk beds and repairs furniture.  (Mark Simons Deposition at pg. 32, lns. 5-14.)  Defendants have lived at the residence at 185 West Center Street from 1996 until today.  (Mark Simons Deposition at pg. 19, lns. 10-14.)  Mr. Simons asserted the Fifth Amendment when questioned about who paid the utilities and county property taxes for the parcels.  (Mark Simons Deposition at pg. 29, lns. 1-22.)

With respect to Parcels 1 and 2, Mr. Simons stated, "I am in control of the property.  That [1994] was probably about the time I took control of the property."  (Mark Simons Deposition at pg. 30, lns. 8-12.)  The Simons Family Trust was formed by Defendants.  (Mark Simons Deposition at pg. 38, lns. 15-19.)  When questioned about why the Simons Family Trust was created, Mr. Simons stated, "It would just isolate assets.  I really don't

know, you know.  It--hindsight I don't think it was even necessary.  The trust didn't do anything that I thought would be of a helpful nature."  (Mark Simons Deposition at pg. 38 ln. 25-pg.39, ln. 10.)  When asked if Simons Family Trust holds title to Parcel 1, Mr. Simons responded:

> A.  It may look like it from the recorder's point of view, if you went down to the county recorder, but no.
>
> Q.  And why do you say no?
>
> A.  Well, my wife and I have been in control of the property since 1994.

(Mark Simons Deposition at pg. 39, lns. 13-19.)  Defendants' control extended to both parcels.  (Mark Simons Deposition at page 39, lns. 20-22.)

Simons Family Trust did not provide any consideration for the transfer of the two parcels to it by Defendants.  (Mark Simons Deposition at pg. 40, ln. 23-pg. 41, ln. 3.)  Defendants do not pay rent to Simons Family Trust for use of the parcels.  (Mark Simons Deposition at pg. 40, lns. 1-3.)  On July 31, 1996, Bank One Utah, N.A., executed a full reconveyance of Parcel 1 to Defendants.  (Docket Entry #107-32.)  The reconveyance document was recorded with the Juab County Recorder.  (*Id.*)

## C.  Procedural History in This Court

Plaintiff filed its Complaint in this case on September 7, 2006, and the case was assigned to United States District Judge Dale A. Kimball.  (Docket Entry #1.)  After Defendants filed a

Counterclaim against Plaintiff (Docket Entry #45), Plaintiff filed an Amended Complaint (Docket Entry #47). Following numerous motions and orders, Defendants filed their Answer and Counterclaim on April 4, 2007. (Docket Entry #28.)

On October 8, 2008, Plaintiff filed its Motion for Summary Judgment against Defendants, now before the court, together with exhibits and a supporting memorandum. (Docket Entries #107, 108.) Defendants then filed their opposing Motion for Summary Judgment on October 8, 2008, along with their supporting exhibits and an accompanying memorandum. (Docket Entries #109-112.) Plaintiff filed its response to Defendants' summary judgment motion on November 7, 2008. (Docket Entry #115.) That same day, Defendants filed their response to Plaintiff's summary judgment motion. (Docket Entries #116, 117.) On November 21, 2008, Defendants filed a reply to Plaintiff's response to Defendants' summary judgment motion. (Docket Entries #118, 119.)

On November 1, 2008, the case was reassigned to United States District Judge Clark Waddoups. (Docket Entry #114.) On January 29, 2009, Judge Waddoups referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket Entry #125.) On September 8, 2009, Defendants filed a motion to vacate the order of reference to Magistrate Judge Alba, arguing that they had not consented to the order of reference. (Docket Entry #136.) On September 10, 2009, Judge Waddoups denied that motion, explaining that a referral

13

made under 28 U.S.C. § 636(b), as is the case here, does not require the parties' consent because the magistrate judge will only make recommendations to the district court on how dispositive motions should be resolved. (Docket Entry #140, citing *Garcia v. City of Albuquerque*, 232, F.3d 760, 765-66 (10th Cir. 2000).)

The court held a hearing on the cross motions for summary judgment on September 14, 2009. Just before the hearing began, Defendants submitted a second motion to vacate the referral to a magistrate judge; after the hearing ended, this motion was properly filed with the court. (Docket Entry #145.) After the hearing began, Magistrate Judge Alba explained to Defendants that Judge Waddoups was the one who would ultimately make the decision on the summary judgment motions and that Judge Alba would simply submit a report and recommendation, to which the parties could then file objections. Defendants continued to state their objection to the proceedings being conducted before a magistrate judge and announced that they "refused to participate" in the hearing. When Judge Alba asked them to explain what refusing to participate meant, Ms. Simons said that they would not answer any of Judge Alba's questions about the case and they would stand on their pleadings. After Judge Alba allowed Plaintiff's attorney to present his oral argument, he asked Defendants if they wished to respond to those arguments. Defendants again objected to the

proceeding, refused to engage in the substance of the case, and
the hearing ended.

## ANALYSIS

Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as
to any material fact and that the moving party is entitled to a
judgment as a matter of law." Fed. R. Civ. P. 56. The party
moving for summary judgment has the initial burden of showing the
absence of a genuine issue of material fact. *See* Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986). Once the movant's burden
is met by producing evidence which, if uncontroverted, would
entitle the movant to judgment as a matter of law, the burden
then shifts to the nonmoving party to set forth specific facts
demonstrating that there is a genuine issue for trial. *See*
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).
The nonmoving party "may not rely merely on allegations or
denials in its own pleading. . . ." Fed. R. Civ. p. 56(e)(2).
This burden placed on the nonmoving party is not negligible;
"[i]f the evidence [proffered by the nonmoving party]
is merely colorable or is not significantly probative, summary
judgment may be granted." *Anderson*, 477 U.S. at 249-250
(citations omitted). Conclusory allegations unsupported by
specific factual data are insufficient to create a triable issue

15

of fact so as to preclude summary judgment.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Two opposing motions for summary judgment are before the court.  In the first summary judgment motion, Plaintiff argues it is entitled to summary judgment, which would enable it to reduce unpaid tax assessments of federal income tax, and related penalties and interest, to judgment.  These assessments were made against Defendants.  Plaintiff asks the Court to determine that Simons Family Trust holds Parcels 1 and 2 as a nominee and as Defendants' fraudulent transferee.[10]

In the second summary judgment motion, Defendants argue various procedural challenges to the assessments and contend that the amount of tax and penalties against them is incorrect.  With

---

[10]In its memorandum supporting its summary judgment motion, Plaintiff explains that after default was entered against J.P. Morgan Chase & Co., as successor in interest to Bank One, Utah, N.A., Plaintiff learned that Bank One, Utah, NA, had previously executed a Full Reconveyance with respect to Parcel 1, which was recorded; therefore, Plaintiff has no need to obtain a default judgment against J.P. Morgan Chase & Co.

Plaintiff obtained a default judgment against J. Barres Jenkins and Norma C. Jenkins.  (Docket Entry #129.)  During the course of this litigation, Plaintiff learned that Norma C. Jenkins, the wife of J. Barres Jenkins, died prior to the commencement of this suit.  Plaintiff has forwarded a disclaimer of interest to J. Barres Jenkins because it appears that the promissory note underlying the deed of trust for which he is a beneficiary has been satisfied.  Plaintiff explains that in the event Mr. Jenkins does not execute the disclaimer of interest, Plaintiff will move the court for permission to file the appropriate motions against Mr. Jenkins.

In addition, Plaintiff admits that it appears Greenpoint Mortgage Company has a valid lien against the real property.  Thus, Plaintiff reached a stipulation with Greenpoint Mortgage Company regarding its respective priority.  (Docket Entry #130.)

respect to the foreclosure action, Defendants argue that there
was no reason to believe that they were acting outside the law.

## I.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that it has met its burden and is now
entitled to reduce assessments for the tax years at issue to
judgment.  Plaintiff further argues that it is entitled to
foreclose its federal tax liens upon the two parcels of real
property at issue in this case.

## A. Reduction of Assessments to Judgment

In an action to collect federal taxes from unreported
income, the government generally establishes a prima facie case
when it shows timely assessment of the tax due supported by a
minimal evidentiary foundation, at which point a presumption of
correctness arises.  *See United States v. McMullin*, 948 F.2d 1188
(10th Cir. 1991).  A presumption of correctness attaches to the
assessment once some substantive evidence is introduced
demonstrating the taxpayer received unreported income.  *See id.*
This presumption will permit judgment in the government's favor
unless the opposing party produces substantial evidence
overcoming it.  *See id.; see also United States v. Brown*, 348
F.3d 1200 (10th Cir. 2003) (providing that the taxpayer bears the
burden of establishing an error in the IRS's determination of tax
due).

In this case, Plaintiff has produced IRS Forms 4340,
Certificate of Assessments, Payments, and Other Specified

Matters, for the joint assessment against Defendants for the
1992-1994 tax years; for the individual assessments against Mr.
Simons for the 1995-2000 tax years; and for the individual
assessments against Ms. Simons for the 1995-2000 tax years.
(Docket Entries #107-3 to 107-21.)  This documentation shows that
Defendants are indebted to the United States for unpaid assessed
balances of tax, penalties, and interest.[11]  Additionally, the
Notices of Deficiency and Explanations of Adjustments provide an
explanation of the basis for the assessments shown on the Forms
4340.  (Docket Entry #107-2, at ¶ 10 and Exhibit 19.)

The IRS determined that Defendants received income from the
operation of the woodworking business which they had failed to
report.  *See id.*  Defendants have been given plenty of
opportunity to provide a substantive basis to challenge the
assessments made pursuant to the audit examination, but, as
discussed in more depth below, they have failed to do so.
Furthermore, during the audit examination, Defendants refused to
cooperate.

In addition, during the course of discovery, Defendants
failed to present any documents or testimony that challenged the

---

[11]Plaintiff explains in its memorandum supporting its motion
for summary judgment that the documentation itemized above does
not reflect accrued but unassessed statutory interest and
penalties that continue to accrue for each of the years at issue,
because those amounts change from day to day.  Plaintiff explains
that the Declaration of Maureen Neal establishes the amounts owed
as of September 11, 2008.  (Docket Entry #107, Neal Declaration.)

substantive basis of the assessments.  Rather, Defendants have consistently asserted that because they are not taxpayers, they cannot be subject to any federal income tax liability.  Mr. Simons contends that he "charged the fair value of his labor equal to the exchange value of the loss sustained while performing services in his profession."  (Affidavit at ¶18.) This assertion attempts to use the concept of human depreciation in determining income; however, this concept is not a permissible means of determining one's income, *see Standifer v. Commissioner*, T.C. Memo 1995-348 (a taxpayer cannot offset the cost of his labor against the income he receives), and the Tenth Circuit has rejected baseless arguments such as those advanced by Defendants, *see Charczuk v. Commissioner*, 771 F.2d 471, 473 (10th Cir. 1985) ("Hence, there is no question but that Congress has the constitutional authority to impose an income tax . . . ." (emphasis added by court), *quoting Ficalora v. Commissioner of Internal Revenue*, 751 F.2d 85, 87-88 (2nd Cir. 1984); *Lonsdale v. United States*, 919 F.2d 1440 (10th Cir. 1990).

Generated under seal and signed by an authorized delegate of the Secretary of the Treasury, Forms 4340 are admissible into evidence as self-authenticating official records of the United States, carrying a presumption of correctness.  *See March v. IRS*, 335 F.3d 1186, 1188 (10th Cir. 2003); *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992); *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992); Fed. R. Evid. 803(8) and 902(1).  The "23C"

19

entries on the Forms 4340 show that the taxes at issue were duly assessed and recorded. *See United States v. Chila*, 871 F.2d 1015, 1017 (11th Cir. 1989); *Rossi v. United States*, 755 F. Supp. 314, 318 (D. Or. 1990). The "Notice" entries on the Forms 4340 constitute proof that adequate notice and demand was made. *See United States v. Chila*, 871 F.2d at 1019; *United States v. Lorson Electric Co.*, 480 F.2d 554, 555-56 (2d Cir. 1973).

Defendants have not presented any admissible, contrary evidence that sufficiently rebuts the presumption of correctness in favor of the information contained in the above-described Forms 4340, as well as the information provided in the Notices of Deficiency and Explanation of Adjustments and in the deposition testimony. As a result, Plaintiff is entitled to judgment as a matter of law for the unpaid assessed balances shown thereon, together with statutory interest and penalties accruing to the date of payment. *See Guthrie,* 970 F.2d at 737 (explaining that Form 4340 is "presumptive proof of a valid assessment"); Fed. R. Civ. P. 56(e).

## B. Foreclosure of Federal Tax Liens

### i. *Tax Liens Against Defendants Attach to All Property and Rights to Property in Which Defendants Have an Interest*

After an assessment and notice and demand, a lien arises in favor of the United States in the amount of the assessment. *See* 26 U.S.C. § 6321. The tax lien is all encompassing; it attaches

to all the taxpayer's property and rights to property on the date
the lien arises.  *See* 26 U.S.C. §§ 6321 and 6322; *Drye v. United
States*, 528 U.S. 49, 55 (1999).  In addition, the tax lien
attaches to any property interest subsequently acquired by the
taxpayer while the lien is in force.  *See Glass City Bank v.
United States*, 326 U.S. 265, 267-268 (1945).  The tax lien
continues in full force until the liability is paid in full or
becomes unenforceable due to the lapse of time.  *See* 26 U.S.C. §
6322; *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244
(10th Cir. 1989).  A tax lien of the United States is perfected
upon assessment and further action need not be taken.  *See United
States v. Vermont*, 377 U.S. 351, 352 (1964).  In this case, the
tax liens were perfected on the dates reflected on the
certificates of assessments and payments for the tax periods at
issue.  *See United States v. City of New Britain*, 347 U.S. 81
(1954).  Thus, the liens attached to all of Defendants' property
and rights to property, and any property subsequently acquired,
on the dates listed on the tax liens.

### ii.  The United States May Foreclose Its Liens Against Property Held By a Nominee of a Taxpayer

Plaintiff also argues that it may foreclose its federal tax
liens against the two parcels of real property at issue because
Simons Family Trust holds the real property at issue as
Defendants' nominee.  "A nominee is one who holds bare legal
title to property for the benefit of another."  *Scoville v.*

*United States, 250 F.3d 1198, 1202* (8th Cir. 2001). It is well
settled that property held by a taxpayer's nominee may be
subjected to a federal tax lien or levy. *See G.M. Leasing Corp.
v. United States*, 429 U.S. 338, 350-51 (1977). The nominee
doctrine "stems from equitable principles." *Richards v. United
States (In re Richards)*, 231 B.R. 571, 578 (E.D. Pa. 1999).
"Focusing on the relationship between the taxpayer and the
property, the [nominee] theory attempts to discern whether a
taxpayer has engaged in a sort of legal fiction, for federal tax
purposes, by placing title to property in the hands of another
while, in actuality, retaining all or some of the benefits of
being the true owner." *Id.* Courts generally look to various
factors to determine whether nominee liability exists. *See
United States v. Reed*, 168 F. Supp.2d 1266, 1268-1269 (D. Utah
2001). This holding is consistent with the Tenth Circuit's
previous holding in *United States v. Miller Bros. Constr. Co.
See* 505 F.2d 1031, 1036 (10th Cir. 1974) (providing that a lien
could be enforced against property when the taxpayer had directed
that legal title be placed in a third party's name and observing
that "the fact taxpayer exerted dominion and control over the
land from 1952 until his death in 1971 is indicative of
ownership"). In addition, the use of the nominee doctrine to
collect federal taxes has been approved where the nominee is an
individual, *see, e.g.*, *United States v. Reed*, 168 F. Supp.2d 1266

(D. Utah 2001); *Holman v. United States*, 505 F.3d 1060 (10th Cir. 2007); *United States v. Williams*, 581 F. Supp. 756, 758 (N.D. Ga 1982), *aff'd.*, 729 F.2d 1340 (11th Cir. 1984) (per curiam)), a corporate entity, *see, e.g.*, *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725 (11th Cir. 1989), and most notably a trust, *see, e.g.*, *United States v. Marsh*, 114 F. Supp.2d 1036, 1043 (D. Hawaii 2000); *In re Richards*, 231 B.R. at 578.

This court has recognized that courts consider the following factors as support for finding nominee status: (1) the taxpayer exercises dominion and control over the property while the property is in the nominee's name; (2) the nominee paid little or no consideration for the property; (3) the taxpayer placed the property in the nominee's name in anticipation of a liability or lawsuit; (4) a close relationship exists between the taxpayer and nominee; (5) the taxpayer continues to enjoy the benefits of the property while it is in the nominee's name; and (6) the failure to record the conveyance. *See United States v. Reed*, 168 F. Supp. 2d. 1266, 1268-69 (D. Utah 2001). One of the most, if not the most, significant factors in determining nominee status may be whether the judgment debtor-taxpayer can control (either directly or indirectly) the assets at issue. *See In re Richards*, 231 B.R. at 579 (citing *United States v. Kudasik*, 21 F. Supp.2d 501, 508 (W.D. Pa. 1998) (*citing Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989))); *accord*

*United States v. Novotny*, 2001 WL 1673628 at * 3-4 (D. Colo. 2001) ("The critical issue is who has substantial control over the property." (Citations omitted.)).

Defendants' deposition testimony, Defendants' refusal to provide deposition testimony through the assertion of the Fifth Amendment, and the documents obtained from Juab County's Recorder establish that Simons Family Trust is a nominee of Defendants. The factors typically relied upon by courts to make a nominee determination exist, with the exception of the failure to record the transfer. First, Defendants continued to exercise dominion and control over the real property notwithstanding the purported transfer to Simons Family Trust. Defendants continued to reside at the real property and did not pay rent to the Trust for the use of the residence after the transfer. Mr. Simons continued to operate his wood manufacturing business on the property after the purported transfer. Second, Simons Family Trust paid no consideration to Defendants for the purported transfer of the real property. Third, the transfer occurred in anticipation of the assessment of a federal tax liability. The purported transfer to Joyce W. Simons as trustee of Simons Family Trust occurred during the tax years at issue. Fourth, there is a close relationship between Simons Family Trust and Defendants: Ms. Simons is the Trustee of Simons Family Trust. Fifth, Defendants continued to enjoy the benefits of the real property because they have continued to live on Parcel 1 and to operate a business on

24

Parcel 2 after the purported transfer.  In sum, nearly all factors relevant for a court to conclude that Simons Family Trust holds the real property as a nominee of Defendants have been established.

### *iii. Fraudulent Transfer to Simons Family Trust*

The Utah Fraudulent Transfer Act governs transfers which may be determined to be fraudulent as to both present and future creditors.  *See* Utah Code Ann. § 25-6-1 to 13.  Section 25-5-6 provides in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) with actual intent to hinder, delay or defraud any creditor of the debtor.

Utah Code Ann. § 25-6-5.  Due to the difficulty in establishing an actual intent to defraud directly, courts have allowed fraud to be inferred by the presence of "certain indicia or badges of fraud."  *See Tolle v. Fenley*, 132 P. 3d 63, 69 (Utah App. 2006).  These "badges of fraud" from which actual intent may be inferred include, inter alia, a debtor "(1) continuing in possession and evidencing the prerequisites of property ownership after having formally conveyed all of his interest in the property; (2) making a conveyance in anticipation of litigation, and (3) making a conveyance to a family member without receiving fair consideration.  *See id.* (*citing Dahken Inc., v. Wilmarth*, 726

P.2d 420, 423 (Utah 1986)).  Here, the three badges of fraud

discussed above are present: (1) Defendants continued to treat

the real property as their own notwithstanding the transfer; (2)

while the conveyance may not have been made in anticipation of an

immediate lawsuit, it was made in anticipation of the occurrence

of liabilities which form the basis for the instant suit; and (3)

the conveyance was to a family member as Ms. Simons is the

Trustee of Simons Family Trust.  In sum, the same factors which

support the conclusion that the Simons Family Trust is the

nominee of Defendants support the conclusion that it is a

fraudulent transferee under Utah law.

In conclusion, Plaintiff has met its burden of showing the

absence of a genuine issue of material fact.  Plaintiff has

produced evidence which, if uncontroverted, would entitle it to

judgment as a matter of law.  The burden now shifts to Defendants

to set forth specific facts demonstrating that there is a genuine

issue for trial.  Although Defendants have asserted many

arguments, they have not produced any evidence that controverts

the evidence Plaintiff has produced.  In other words, Defendants

have not demonstrated that there is a genuine issue for trial.

Many of Defendants' arguments were repeated and developed in

their summary judgment motion, discussed below; however, because

Defendants did not produce any admissible evidence that

controverts the evidence Plaintiff has produced, the court

concludes that Plaintiff's motion for summary judgment should be

granted, and Defendants' opposing motion for summary judgment, as discussed next, should be denied.

## II.  Defendants' Motion for Summary Judgment

After Plaintiff filed its summary judgment motion, Defendants filed an opposing motion for summary judgment.  With respect to the federal tax assessments at issue, Defendants raise various procedural challenges to the assessments and also contend that the amount of tax and penalties against them is incorrect. With respect to the foreclosure action, Defendants contend that there was no reason to believe that they were acting outside the law.  Having carefully examined Defendants' arguments, the court concludes that they lack merit.

### A.  Procedural Challenges

Defendants raise a variety of procedural challenges to the IRS's determination of the tax liabilities at issue.  Defendants contend that (1) the IRS wrongfully made "whipsaw" assessments; (2) Plaintiff did not use a "method of accounting" which complied with Sections 441 and 446(a) of the Internal Revenue Code; (3) Plaintiff failed to notify Defendants of their obligation to keep books and records under 26 U.S.C. § 6001; (4) Plaintiff failed to notify Defendants of the specific tax imposed against them; (5) Defendants rescinded the Notices of Deficiency issued against them; (6) the Certificates of Assessments and Payments do not establish that assessments were made against them; (7) Plaintiff

failed to comply with the Paperwork Reduction Act; and (8) the assessed penalties are excessive.

First, Defendants contend that the IRS improperly made "whipsaw" assessments because the same assessments were made against Defendants and two trusts named Simons Family Trust and Simons Enterprises Trust based upon the same income received from Mr. Simons' wood manufacturing business. Plaintiff has explained that the IRS took this position to avoid the consequences of potentially inconsistent positions taken by two taxpayers. For example, one or more of the trusts could take the position that the income was taxable to Defendants while Defendants could in turn take the position that the income was taxable to the trusts. The IRS may defend against inconsistent treatment by issuing notices of deficiency for the same tax to two different parties. *See Seidel v. Commissioner*, T.C. Memo. 2005-67.

Second, Defendants contend that the Commissioner somehow erred in not establishing a method of accounting under 26 U.S.C. §§ 441 and 446. Defendants misconstrue the purpose and effect of these provisions. Section 441(a) sets forth the period for the computation of taxable income. *See* 26 U.S.C. § 441. Section 446 requires a taxpayer to compute his income pursuant to "the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C. §446 (a). These statutory provisions require that taxpayers use a method of accounting in computing income, but do not require that the

28

Commissioner establish a particular method of accounting. Rather, the Commissioner may adjust a taxpayer's method of accounting to clearly reflect income. *See Hospital Corp. of America v. Commissioner*, T.C. Memo 1996-105, *citing Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532-533 (1979).

Third, Defendants' contention that Plaintiff did not provide evidence that Defendants received income is incorrect. In Plaintiff's summary judgment motion, Plaintiff produced Notices of Deficiency and Explanation of Adjustments for the tax years at issue. Indeed, Mr. Simons himself admits to having received income in the affidavit filed with his motion: "That during the years 1992 through 2000, Affiant Mark Simons exercised his right to sell his labor in exchange for compensation received as wages." Affidavit at ¶16.

Fourth, as discussed in detail below, individuals are required to maintain books and records from which their income may be computed. *See* 26 U.S.C. 6001. Defendants are not entitled to receive a notice personally from the Secretary informing them of this requirement. Defendants have an independent obligation to maintain records notwithstanding the Commissioner's discretion under Treas. Reg. 1.6001-1(d) to notify taxpayers of the obligation to require that certain records be maintained. *See Perkins v. Commissioner*, 262 F.Appx. 119, 120 (11th Cir. 2008).

Fifth, Defendants' contention that they "rescinded notices of deficiency" lacks merit. 26 U.S.C. § 6212(d) provides in pertinent part: "the Secretary may, with the consent of the taxpayer, rescind any notice of deficiency mailed to the taxpayer." Defendants mistakenly interpret this provision to grant a taxpayer the unilateral authority to rescind a notice of deficiency.

Sixth, Defendants challenge the assessments made against them by contending that the Certificates of Assessments and Payments cannot be relied upon to establish an assessment was made. This contention also lacks merit. As explained above, the Certificates of Assessments and Payments may be admitted as evidence to establish that taxes were duly assessed. *See March v. IRS*, 335 F.3d 1186, 1188 (10th Cir. 2003).

Seventh, Defendants contend that the assessments are defective because Plaintiffs did not comply with the Paperwork Reduction Act. There are at least three reasons why this argument fails. First, Defendants have failed to establish through admissible evidence that any violation of the act occurred. Second, Defendants' contention that "all collections activity conducted by the Service must comply with the Act" is incorrect. The Tenth Circuit has held that the Paperwork Reduction Act does not apply to forms used to collect information concerning an individual's tax liability. *See Lonsdale v. United States*, 919 F.2d 1440, 1445 (10th Cir. 1990). Finally, Defendants

have failed to provide any authority for the proposition that a violation of the Paperwork Reduction Act by the IRS would provide the remedy of absolving a taxpayer of all his federal income tax liabilities.

Eighth, Defendants contend that the taxes imposed upon them are fines and, because of the excessive amounts, are unlawful. Again, this contention is erroneous. As explained above, the tax assessments were based on an audit examination in which the IRS determined that Defendants owed additional federal income tax. While Defendants correctly note that the IRS also assessed penalties against them, they have failed to introduce any evidence to establish that the penalties were not properly assessed.

Finally, Defendants also contend that the penalties were not properly assessed because Plaintiff failed to follow 26 U.S.C. § 6751(b)(2). This argument fails because Defendants have not, and cannot, show that this provision has any application to the penalties at issue in this case. As Plaintiff discussed in detail in response to the Simons' motion to compel, the penalties at issue in this case were either assessed before the enactment of 26 U.S.C. § 6751(b)(2) or are specifically excluded from its requirements. (Docket Entry #83, United States' Response to Defendants' Motion to Compel, at pages 8-9.)

## B. The Merits of Taxes At Issue

### *i. Defendants' Failure to Keep Records*

Defendants make the following complaint that the IRS improperly computed their income because it did not allow for deductions and exclusions:  "the Government has a duty to abide by the internal revenue laws in the collection of federal income taxes, this includes statutes that allow for exemptions, exclusions and deductions from income . . . ."

With respect to the cost of manufacturing the wood products, the sale of which was used to compute Defendants' income, the taxpayer has the burden of proving the cost of goods sold.  Irwin H. Bard, T.C. Memo 1990-431.  Here Defendants have produced no evidence from which the cost of goods sold could be determined. Furthermore, taxpayers are required to retain sufficient books and records from which their true income can be determined.  26 U.S.C. 6001. Treas. Reg. 1.6001-1(a) specifically provides that taxpayers "shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information."  Treas. Reg. Section 1.6001-1(a).  Defendants have failed to produce any records reflecting that the costs of goods sold, the gross receipts for the wood products sold, or records reflecting that they would be entitled to any deductions.  Where a taxpayer's records are incomplete or inaccurate, the

Commissioner is authorized to reconstruct income in accordance with any reasonable method that accurately reflects actual income. *See* 26 U.S.C. §§ 446, 6001; Palmer v. United States, 116 F.3d 1309, 1312 (9th Cir. 1997). In this regard, the Tenth Circuit has noted:

> Where, as here, the taxpayer keeps inadequate records or no records at all the Commissioner is entitled to reconstruct the taxpayer's gross receipts and costs to arrive at an assessment for the unreported income. See Anson, 328 F.2d at 705-06; Adamson v. Commissioner, 745 F.2d 541, 548 (9th Cir. 1984) ("The absence of tax records, cannot automatically deprive the Commissioner of a rational foundation for the income determination'). Thus a taxpayer who has abandoned the advantage of mathematical precision by failing to keep adequate records cannot complain that the Commissioner's assessment is based on estimates rather than proven amounts of unreported income.

*Jones v. Commissioner*, 903 F.2d 1301, 1303 (10th Cir. 1990).

Defendants wrongly attempt to place the burden on Plaintiff for not allowing them an appropriate amount of expenses and deductions. As the Tax Court has stated:

> Deductions are a matter of legislative grace, and petitioner [taxpayer] bears the burden of proving that he is entitled to deductions claimed. [FN5] *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934).
>
> Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct liability. *See* sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In addition, the taxpayers bears the burden of substantiating the amount

and purpose of the item for the claimed
deduction. *See Hradesky v. Commissioner*, 65
T.C. 87, 90 (1975), *affd. per curiam* 540 F.
2d 821 (5th Cir. 1976).

*Ashley v. Commissioner*, 80 T.C. M. 841 (2000). To the extent that

Defendants believe they are entitled to deductions, they are

required to produce documentation to substantiate their claims.

### ii. Defendants' Refusal to Provide Information From Which Their Income Could Be Computed

Defendants failed or refused to provide any documents from

which their income tax obligations for the 1992-2000 tax years

could be determined.  Defendants failed to produce any

information from which their income could be determined for the

years at issue.  After first refusing to attend depositions and

then being compelled to attend, Defendants repeatedly asserted

the Fifth Amendment when questioned about the tax liabilities at

issue.

Defendants' failure to testify regarding the tax liabilities

at issue by instead asserting the Fifth Amendment allows the

court to draw the negative inference that the testimony would

have supported Plaintiff's position.  In discussing a taxpayer's

assertion of the Fifth Amendment, the Tax Court noted:

Petitioner's argument that Rule 91(f) could
not be applied without violating his Fifth
Amendment privilege must be rejected. The
phrase that comes readily to mind was first
used by the U.S. Supreme Court in United
States v. Sullivan, 274 U.S. 259, 264 (1927),
to wit, a taxpayer may not "draw a conjurer's
circle around the whole matter" of his or her
tax liability.

34

*Lee v. Commissioner*, T.C. Memo. 2002-95.  Here, Defendants are
attempting to do precisely that – draw a conjurer's circle around
any determination of their tax liability for the years at issue.
They have refused to provide documents or testimony from which
their income may be determined, but now assert that the IRS has
erred in determining income for the years at issue.  The court
may draw an adverse inference from a party's failure to testify
in a civil action.  *See Libutti v. United States*, 107 F.3d 110,
121 (2nd Cir. 1997).  Here, the court in fact draws an adverse
inference from Defendants' refusal to testify concerning their
income and tax adjustments made by the IRS for the tax years at
issue.

## C. Nominee and Fraudulent Transferee

Defendants label Plaintiff's position that the Simons Family
Trust is an alter ego of Defendants as an "unsubstantiated
conclusory allegation."  (Docket Entry #10, Defendants'
Memorandum in Support of Motion for Summary Judgment, at ¶26.)
Defendants assert that "Simons Family Trust was created under the
laws of the state of Utah pursuant to Utah Code § 75-7-107,
complete with beneficiaries that do not include the Defendants
Simons."  (*Id.*)  Similarly Defendants contend that "no evidence
exists that Defendants proceeded with actual intent to hinder,
delay or defraud the United States or any other person or
entity."  (Docket Entry #110 at ¶28.)  Whether or not the
creation of the Simons Family Trust met the technical

requirements for the creation of a trust under Utah law is of little or no relevance to the issue of whether the federal tax liens attach to the real property. Plaintiff has established, through the submission of admissible evidence, that Defendants exercise dominion and control over the real property at issue such that Simons Family Trust holds title as their nominee. As Mr. Simons stated: "my wife and I have been in control of the property since 1994." Furthermore, as discussed in detail above, typical badges of fraud exist: Defendants continued to treat the property as their own notwithstanding the transfer; the transfer was made in anticipation of the occurrence of liabilities; and the conveyance was to a family member.

In summary, all of Defendants' arguments fail. Defendants have failed to present any substantive challenge to the correctness of the assessments at issue. Instead, they have advanced the frivolous position that they are not taxpayers and are therefore immune from federal taxation. Their procedural challenges to the assessments at issue are based upon flawed or tortured readings of the Internal Revenue Code. Nothing in their summary judgment motion successfully challenges Plaintiff's contention that Simons Family Trust holds the real property at issue as Defendants' nominee and fraudulent transferee.

## RECOMMENDATION

Based on the above analysis, the court concludes that Plaintiff has met its burden of showing that no genuine issue of

fact exists and that Plaintiff is entitled to judgment as a matter of law. The court concludes that (1) Plaintiff has valid federal tax liens which, as a matter of law, attach to all property and rights to property of Defendants; (2) the federal tax liens attach to the real property at issue because Simons Family Trust is simply a nominee of Defendants; and (3) the transfer of the real property from Defendants to Simons Family Trust was a fraudulent conveyance under Utah Code Ann. § 25-6-5. Based on the foregoing, the court concludes that Plaintiff is entitled to judgment as a matter of law reducing the tax assessments to judgment and foreclosing the related federal tax liens against the real property located at 185 West Center Street (Parcel 1) and 105 West Center Street in Nephi, Utah (Parcel 2). As a result,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry #107) be **GRANTED** and that Defendants' Motion for Summary Judgment (Docket Entry #109) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that judgment be entered in Plaintiff's favor as follows:

(1) against Mark Simons and Joyce Simons in the amount of $1,896,288.88, plus interest and penalties as provided by law from September 11, 2008, for unpaid joint federal income tax assessments for the 1992-1994 tax years;

(2) against Joyce W. Simons in the amount of $1,059,037.94, plus interest and penalties as provided by law from September 11,

2008, for unpaid individual federal income tax assessments for the 1995-2000 tax years; and

(3) against Mark Simons in the amount of $1,053,379.22, plus interest and penalties as provided by law from September 11, 2008, for unpaid individual federal income tax assessments for the 1995-2000 tax years.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 9/30/09 day of September, 2009.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge